UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAU YIN TO AND CHENG HYE CHEAH,

Plaintiffs,

-against-

No. 15CV3590-LTS-SN

HSBC HOLDINGS PLC et al.,

Defendants.

MEMORANDUM OPINION AND ORDER

Plaintiffs, who were individual foreign investors in Hermes International Fund ("Hermes"), a British Virgin Islands fund that placed its assets with Bernard L. Madoff Investment Securities ("BLMIS"), bring claims against a number of HSBC-affiliated entities (collectively, the "HSBC Defendants"[1] or "Defendants") and two sub-groupings of those entities (the "HSBC Administrator Defendants,"[2] and the "HSBC Custodian Defendants"[3]) arising from the various HSBC Defendants' alleged involvement with BLMIS' Ponzi scheme. Plaintiffs bring five claims: (1) breach of fiduciary duty, against the HSBC Administrator and Custodian

[1] The HSBC Defendants are: HSBC Holdings PLC ("HSBC Holdings"); HSBC Bank PLC ("HSBC Bank"); HSBC Bank USA, N.A. ("HSBC Bank USA"); HSBC Securities Services (Bermuda) Limited ("HSSB"); HSBC Institutional Trust Services (Bermuda) Limited ("HITSB"); HSBC Bank Bermuda Limited ("HSBC Bank Bermuda"); HSBC Securities Services (Luxembourg) S.A. ("HSSL"); HSBC Private Banking Holdings (Suisse) S.A.; and HSBC Private Bank (Suisse) S.A. HSBC Fund Services (Luxembourg) S.A. was voluntarily dismissed from the action by stipulation and consent order. (Docket entry no. 21.)

[2] HSBC Administrator Defendants are: HSBC Bank Bermuda, HSSL, and HSSB.

[3] HSBC Custodian Defendants are: HSBC Bank Bermuda, HSSL, and HITSB.

Defendants; (2) aiding and abetting breach of fiduciary duty, against HSBC Holdings, HSBC Bank, HSBC Bank USA, HSBC Private Bank Holdings, and HSBC Private Bank (Suisse); (3) aiding and abetting fraud, against all the HSBC Defendants; (4) negligent misrepresentation, against the HSBC Administrator Defendants; and (5) unjust enrichment, against all the HSBC Defendants. The Court has subject matter jurisdiction of this action pursuant to 18 U.S.C. § 1334(b).

The case is now before the Court on the HSBC Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and other alleged defects. The Court has reviewed carefully the submissions of the parties. For the following reasons, Defendants' motion to dismiss the Complaint is granted.

## BACKGROUND

The circumstances surrounding the collapse of Madoff's Ponzi scheme are well-known; the Court will summarize the Complaint's allegations that are relevant to this motion practice below.

Hermes International Fund is an open-ended investment company organized under the laws of the British Virgin Islands ("BVI"), which issued several different classes of shares allocated to sub-funds. (Compl. ¶ 49.) Between 2002 and 2008, Plaintiffs purchased millions of dollars of shares of one of those sub-funds, known as the Hermes World Sub-Fund ("Hermes"), which then placed all of Plaintiffs' investments into BLMIS through Hermes' subsidiary, Lagoon, without Plaintiffs' knowledge. (Id. ¶¶ 17, 48-49.) Plaintiffs allege that they suffered individual injury when the Ponzi scheme collapsed because certain BLMIS investors

redeemed their investments prior to the revelation of Madoff's Ponzi scheme. (Id. ¶ 53.)

Plaintiffs allege that the HSBC Defendants played a key role in facilitating the Ponzi scheme by funneling billions of dollars to BLMIS through the so-called "Feeder Funds," such as Hermes. (See id. ¶¶ 3, 55.) Plaintiffs allege that Defendants accomplished this by acting as "custodian, administrator, manager and promoter of the many Feeder Funds." (Id. ¶ 55.) Plaintiffs further allege that, by lending the HSBC name to the funds, the HSBC Defendants convinced Plaintiffs and other investors that the Feeder Funds were a safe place to invest their money. (Id.)

The HSBC Administrator Defendants served as administrators, registrars, and service agents pursuant to agreements with the Feeder Funds. (Id. ¶ 61.) In this capacity, the HSBC Administrator Defendants, for a fee, were responsible for the day-to-day administration of the funds, which entailed, among other things, issuing and redeeming fund shares, and maintaining books and records of those funds. (Id.) Plaintiffs allege that the HSBC Administrator Defendants committed to providing services beyond those of a typical fund administrator, including being responsible for determining the share price of Hermes, and for maintaining the accounts and financial records of Hermes for the proper conduct of the fund's financial affairs. (Id. ¶ 64.) The HSBC Administrator Defendants allegedly had "discretionary authority" to pay fund expenses, draw on funds to perform fund duties, employ agents, use the name of the fund and sign documents on behalf of the fund. (Id. ¶ 65.) Plaintiffs allege that the HSBC Administrator Defendants were agents of Hermes in its dealings with the public, including sending out to Plaintiffs portfolio summary reports regarding their investment in Hermes. (Id. ¶ 66.) Plaintiffs also allege that, acting in their capacity as fund administrators and sub-administrators, the HSBC Administrator Defendants transmitted directions to BLMIS

(located in New York) and received from BLMIS trade confirmations, account statements and other information. (Id. ¶ 31.) The HSBC Administrator Defendants, accordingly to Plaintiffs, communicated with BLMIS in connection with their duties as fund administrators, and transmitted false information provided by BLMIS to customers located around the world, including in the United States. (Id.)

The HSBC Custodian Defendants entered into custodian agreements with certain of the Feeder Funds, under which they were responsible for maintaining separate accounts, overseeing the administration of the payment and redemption of funds; and otherwise transferring, exchanging or delivering securities as directed by the Feeder Funds. (Id. ¶ 69.) HSBC Bank Bermuda served as custodian to Hermes pursuant to a custodian agreement, and HSSL served as a sub-custodian for Hermes and Lagoon. (Id. ¶ 70.) Plaintiffs allege that, in their capacity as fund custodian and sub-custodians, the HSBC Custodian Defendants directed and transferred hundreds of millions of dollars to and from BLMIS New York. (Id. ¶ 33.) HSBC Bank Bermuda entered into at least one sub-custodian agreement with BLMIS. (Id. ¶ 23.) HSSL entered into at least one sub-custodian agreement with BLMIS. (Id. ¶ 24.)

Acting in their capacity as payee banks, certain Defendants such as HSBC Bank received and facilitated the transfer of Madoff's criminal proceeds out of BLMIS in New York for the benefit of certain Feeder Funds, and vice versa from the Feeder Funds to BLMIS. (Id. ¶ 35.) Other Defendants, including HSBC Bank and HSBC Bank USA, allegedly increased the flow of funds into Madoff's Ponzi scheme by creating, marketing and selling structured financial products. (Id. ¶ 36.) HSBC Bank USA is domiciled in the United States, and maintains offices and regularly transacts business in New York. (Id. ¶ 37.)

Defendants move to dismiss the Complaint, arguing lack of subject matter

jurisdiction, forum non conveniens, lack of personal jurisdiction over all Defendants other than HSBC Bank USA ("Foreign Defendants"), lack of standing, statute of limitations bar, Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA") bar, and failure to state a claim.

## Discussion

### Subject Matter Jurisdiction

Section 1334(b) of Title 28 confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" of the United States Code, which governs bankruptcy cases and related proceedings. 28 U.S.C. § 1334(b). The Securities Investor Protection Act ("SIPA"), under a subsection titled "Jurisdiction and powers of the court," provides that the court in which an application for a protective decree under SIPA is filed "shall have the jurisdiction, powers, and duties conferred upon a court of the United States having jurisdiction over cases under Title 11, together with such other jurisdiction, powers, and duties as are prescribed by this chapter." 15 U.S.C. § 78eee(2)(A)(iii). BLMIS has long been the subject of SIPA proceedings, which are brought under Title 15 of the United States Code; Chapter 7 bankruptcy proceedings under Title 11 were also commenced against Bernard L. Madoff.

Plaintiffs assert that this Court has subject matter jurisdiction of their action because it is "related" to a case under Title 11, specifically to "[t]he involuntary Chapter 7 petition against Madoff [that] was substantively consolidated with the separate proceeding against BLMIS filed under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§78aaa, et seq." ("BLMIS Consolidated Action") (Compl. ¶¶ 28-29); see SPV OSUS LTD v. UBS AG, No. 15-CV-619, 2015 WL 4079079, at *1 (S.D.N.Y. Jul. 1, 2015) ("After an involuntary chapter

7 petition was filed against Madoff . . . the United States Bankruptcy Court for the Southern District of New York consolidated the Madoff estate with the previously established BLMIS bankruptcy estate, in which a bankruptcy proceeding against BLMIS had been filed under [SIPA].") Defendants contend that this Court lacks subject matter jurisdiction because Section 1334(b) only confers "related to" jurisdiction of cases related to Title 11 cases, and the BLMIS Consolidated Action survives only as one brought under SIPA pursuant to Title 15. More specifically, they contend that the Madoff Chapter 7 estate no longer exists after the consolidation with the BLMIS SIPA action, such that there is no Title 11 case to which this action could be "related." (Defs. Br. at 2 n.3.)

The Consent Order Consolidating the Estate of Bernard L. Madoff Into the SIPA Proceeding of Bernard L. Madoff Investment Securities, provided, inter alia, that "[n]otwithstanding the substantive consolidation of the Madoff estate into the BLMIS SIPA Proceeding, the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee to bring claims under Chapters 5 and 7 of the Bankruptcy Code in consultation with the SIPA Trustee and SIPC," and further provided that "all powers, claims and interests of the Madoff estate are expressly preserved including without limitation all [Bankruptcy Code] Chapter 5 and Chapter 7 powers, rights, claims and/or interests." SIPC v. Bernard L. Madoff Investment Sec. LLC, No. 08-1789 (BRL) (Bankr. S.D.N.Y. Jun. 10, 2009) (docket entry no. 252); see also In re Bernard L. Madoff Investment Sec. LLC, 557 B.R. 89, 109 (S.D.N.Y. 2016). Because the Chapter 7 proceeding remains a component of the consolidated SIPA case, it is unnecessary for the Court to reach the question of whether a court proceeding only under SIPA could have "related to" jurisdiction under 28 U.S.C. § 1334(b). Accordingly, the Court examines whether this case is

"related to" the BLMIS Consolidated Action.

A case is "related to" a Title 11 proceeding if its "outcome might have any conceivable effect" on the bankrupt estate. Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks and citation omitted). An action has a "conceivable effect" on the bankrupt estate "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." SPV, 2015 WL 4079079, at *2 (quoting In re WorldCom, Inc. Sec. Litig., 293 B.R. 308, 317-18 (S.D.N.Y. 2003)). In particular, where "related to" jurisdiction is premised on potential contribution claims by third party defendants against the debtor, courts generally find that jurisdiction exists "where there is a 'reasonable' legal basis for the claim." Id.

Defendants contend that there is no "related to" jurisdiction here because "Plaintiffs have no claims against the estate, so even if they obtained a recovery from the HSBC Defendants, the BLMIS estate would not be affected" and the instant lawsuit will not result in any HSBC Defendant having any greater rights against the BLMIS estate because HSBC Defendants have not filed any contribution or indemnification claims against the BLMIS estate. (Defs. Br. 6-7.) However, as the court found in SPV, Defendants here could potentially have a contribution claim against the BLMIS estate should they be found liable and Defendants could seek leave to file a late proof of claim, which is frequently granted for good cause. See 2015 WL 4079079, at *3. The SPV Court distinguished cases involving claims for indemnification from ones for contribution, finding that "[a]n indemnification right arises at the time the indemnification agreement is executed . . . . [b]y contrast, a contribution claim, such as that potentially at issue here, does not accrue until payment of the underlying liability has been made

by the suing party." (Id. (internal quotation marks and citation omitted).) Finally, the BLMIS estate "continues to recover substantial assets . . . . Therefore, it is within the realm of possibility that the [HSBC] Defendants would receive a distribution." Id. (citation omitted). Accordingly, the Court finds that Plaintiffs' case is related to the BLMIS Consolidated case, and the Court therefore has subject matter jurisdiction of the case pursuant to 28 U.S.C. § 1334(b) and 15 U.S.C. § 78eee(2)(A)(iii).[4]

Personal Jurisdiction

The HSBC Defendants move for dismissal of the Complaint for lack of personal jurisdiction as against all the Foreign Defendants.

"In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits, but without a hearing or jurisdictional discovery, the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff." Fagan v. Republic of Austria, No. 08 CV 6715, 2011 WL 1197677, at *11 (S.D.N.Y. Mar. 25, 2011) (internal quotation marks and citation omitted). In assessing personal jurisdiction, "the court must look first to the long-arm statute of the forum state, in this instance New York." Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997) (citation omitted). Second, "[i]f the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise

---

4 This Court maintains a standing order pursuant to which matters in which jurisdiction arises under 28 U.S.C. § 1334(b) are automatically referred to the Bankruptcy Court. In the interests of judicial economy and efficiency, the Court hereby withdraws the automatic reference of this non-core proceeding. See 28 U.S.C. § 157(d).

comports with the requisites of due process." Id. (citation omitted).

Plaintiffs do not claim that there is general jurisdiction over any of the Foreign Defendants, asserting only that specific (i.e., long-arm) jurisdiction exists over them pursuant to New York C.P.L.R. Sections 302(a)(1) and 302(a)(2). Section 302(a) of the New York long-arm statute authorizes the exercise of specific personal jurisdiction over a non-domiciliary who, in person or through an agent, "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . . ." N.Y. C.P.L.R. § 302(a).

"To establish personal jurisdiction under § 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Barrett v. Tema Development (1988), Inc., 251 F. App'x 698, 700 (2d Cir. 2007) (internal quotation marks and citation omitted). A foreign party "transacts business" in New York when, looking at the totality of the circumstances, he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." Fagan, 2011 WL 1197677, at *13 (internal quotation marks and citations omitted). "Random," "fortuitous," or "attenuated" contacts will not be sufficient. SAS Grp., Inc. v. Worldwide Inventions, Inc., 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) (internal quotation marks and citation omitted). It is the "nature and quality" and not the amount of New York contacts that determine whether purposeful activity occurred. Id. (internal quotation marks and citation omitted). Accordingly, a foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction without the defendant having "projected" itself into New York for the purposes of conducting business there. See Roper v. Starch Worldwide, Inc.

v. Reymer & Associates, Inc., 2 F. Supp. 2d 470, 474 (S.D.N.Y. 1998); see, e.g., Casio Computer Co. v. Sayo, No. 98 CV 3772, 2000 WL 1877516, at *26 (S.D.N.Y. Sept. 20, 1999) (wiring funds to, from, or through New York insufficient for personal jurisdiction). Similarly, communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not "project" a defendant into the state sufficiently to confer personal jurisdiction over it under Section 302(a)(1). See Roper, 2 F. Supp. 2d at 474-75. In short, the contacts with New York must provide "a fair warning to defendant of the possibility of being haled into court [there]." See Avecmedia, Inc. v. Gottschalk, No. 03 CV 7831, 2004 WL 1586411, at *4 (S.D.N.Y. Jul. 14, 2004).[5] In addition, to satisfy the "arise from" requirement, Plaintiffs must demonstrate that there is "some articulable nexus between the business transacted and the cause of action sued upon." Ross v. UKI Ltd., No. 02 CV 9297, 2004 WL 384885, at *4 (S.D.N.Y. Mar. 1, 2004) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (N.Y. 1981)). A foreign defendant need not enter New York to be subject to jurisdiction, "so long as [his] activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Chloe v. Queen Bee of Beverly

---

[5] The Second Circuit has laid out several factors that should be considered in determining whether an out-of-state defendant transacts business in New York: "(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." Maranga v. Vira, 386 F. Supp. 2d 299, 305-06 (S.D.N.Y. 2005) (quoting Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)).

Hills, LLC, 616 F.3d 158, 169 (2d Cir. 2010) (internal quotation marks and citation omitted).

The contacts alleged by Plaintiffs here do not amount to "purposeful availment" of the laws of New York. None of the business activities allegedly conducted by the Foreign Defendants occurred in New York. Plaintiffs do not allege that any contracts between any of the Foreign Defendants and Madoff or BLMIS were negotiated or executed in New York.

Instead, Plaintiffs have alleged that certain of the Foreign Defendants have communicated with and transmitted information and funds to and from BLMIS located in New York, in connection with their fund administration and/or custodial duties under agreements negotiated with BLMIS. These communications and payments were incidental consequences of fulfilling a foreign contract and are insufficient to "project" the Foreign Defendants into New York. See Roper, 2 F. Supp. 2d at 474-75; see also Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 388 (S.D.N.Y. 2006) (no personal jurisdiction when "the clear majority of the performance under the [contract] occurred" outside of New York).

Plaintiffs also allege that HSBC Bank increased the flow of funds into and out of BLMIS, including by creating and marketing structured financial products, and that it had hired KPMG to conduct due diligence on BLMIS. (See Compl. ¶¶ 35, 178-80, 181-84.) While Plaintiffs characterize these activities as HSBC Bank being in the "business of soliciting foreign individuals to invest in BLMIS in New York" (Opp. Br. at 20), Plaintiffs do not allege that HSBC Bank conducted any of these activities in New York. Marketing, even if directed at New York residents (which is not alleged here), is insufficient to establish a transaction of business under Section 302(a)(1), unless it is supplemented by business transactions occurring in the state.

See Maranga, 386 F. Supp. 2d at 308-09.[5] Similarly, Plaintiffs allege generally that HSBC Holdings provides other advisory financial services, but make no allegations that those services were provided in New York in this case. (See Compl. ¶ 56.) Accordingly, the Court finds that Plaintiffs have failed to make a prima facie demonstration that the Foreign Defendants have transacted business in New York to confer personal jurisdiction over them under Section 302(a)(1). See In re Banco Santander Securities-Optimal Litig., 732 F. Supp. 2d 1305, 1320-22 (S.D. Fla. 2010) (finding that HSBC's contacts with New York in connection with obligations as a Madoff "feeder fund" administrator and custodian were incidental to a foreign contractual relationship and do not meet the New York long-arm statute's transacting business requirement); cf. SPV, 114 F. Supp. 3d at 170 (finding, in connection with the operation of a similar foreign Madoff "feeder fund," that defendants' actions took place entirely abroad, with only sporadic or indirect contacts with the United States).

Alternatively, Plaintiffs contend that the HSBC Administrator and Custodian Defendants committed tortious acts sufficient to support specific jurisdiction under N.Y. C.P.L.R. Section 302(a)(2). Section 302(a)(2) extends specific jurisdiction to claims arising from the commission of a tortious act within the state. The New York Court of Appeals has construed this provision to require that the defendant be physically present in New York when he committed the tort. AVRA Surgical Robotics, Inc. v. Gombert, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) (citation omitted).

---

5 Plaintiffs, in their Opposition Brief, contend that "HSBC Bank had at least one employee located in New York." (Opp. Br. at 19.) There is no such allegation contained in the Complaint, and Plaintiffs cite to a KPMG 2006 due diligence report, which contains a reference to "Paul Smith (Head of AFS), HSBC in New York." (Ta Decl. Ex. A at 6.) It is unclear which HSBC entity is being referred to. Moreover, the mere existence of one employee in New York, without more, is insufficient to establish that HSBC Bank transacted business in New York.

Plaintiffs have not alleged that any of the Foreign Defendants have committed a tort while being physically present in New York. They argue, however, that the HSBC Custodian Defendants are responsible for BLMIS' tortious conduct because they engaged BLMIS as a sub-custodian for some of the Feeder Funds, including Hermes, and thereby committed a tortious act in New York through their agent, BLMIS. (Opp. Br. at 22.) The Complaint alleges only that HSBC Bank Bermuda and HSSL entered into a sub-custodian contract with BLMIS. (Compl. ¶¶ 23-24.)

To be considered an agent for jurisdictional purposes under C.P.L.R. Section 302, the putative agent must have acted in the state "for the benefit of, and with the knowledge and consent of" the non-resident principal. Ross, 2004 WL 384885, at *4 (citing Grove Press, Inc. v. Angelton, 649 F.2d 121, 122 (2d Cir. 1981)). In addition, the Second Circuit requires a showing in the jurisdictional context that the principal exercised some control over the activities of the alleged agent. See id. (citing CutCo Indus. Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986)); see also Newman v. Capital Life Ins. Co., 45 F. Supp. 3d 376, 379 (S.D.N.Y. 2014) (a court may not exercise jurisdiction over a non-resident principal on an agency theory absent proof the principal knew about, authorized, and exercised some control over the actions of the alleged agent). Here, the Complaint does not contain any allegations demonstrating the requisite control over BLMIS and, further, the crux of Plaintiffs' Complaint against HSBC is precisely the opposite—that HSBC abrogated any sort of supervision or control over BLMIS. (See, e.g., Compl. ¶¶ 119, 121-24, 197-98.) Accordingly, Plaintiffs have failed to demonstrate a basis for personal jurisdiction on an agency theory under Section 302(a)(2).

Because Plaintiffs have failed to demonstrate a basis for personal jurisdiction over Foreign Defendants, the Court dismisses the Complaint as against the Foreign Defendants,

which leaves HSBC Bank USA as the only remaining Defendant in the action.[6]

Claims Against HSBC Bank USA

Plaintiffs assert aiding and abetting breach of fiduciary duty, unjust enrichment and aiding and abetting fraud claims against HSBC Bank USA. HSBC Bank USA has moved to dismiss the claims against it on the grounds that Plaintiffs lack standing to assert these claims under BVI law (and New York law) in that they are premised on injuries suffered by the Funds, that the claims are barred by the statute of limitations and SLUSA, and that the Complaint fails to state a claim. Because the Court finds that Plaintiffs lack standing under BVI law to bring the

[6] The parties submitted separate letters on December 9, 2016, and December 12, 2016, bringing to the Court's attention the New York Court of Appeals decision in Al Rushaid v. Pictet & Cie, No. 652375/11, 2016 WL 6837930 (Nov. 22, 2016), which overturned a New York First Department dismissal of a case for lack of personal jurisdiction. Contrary to Plaintiffs' contention, Rushaid does not dictate a different result. In Rushaid, a defendant banker in a foreign bank orchestrated the laundering of funds from Geneva to the foreign bank's correspondent bank account in New York. Id. at *1. The New York correspondent bank was used to wire the bribes to the foreign bank, after which the money was divided amongst "corrupted employees" by deposit into their individual accounts at the foreign bank. Id. The bank employee was alleged to have known that the large sums of money being wired were proceeds of an illegal scheme and never questioned them. Id. The Court of Appeals stated that "the quantity and quality of a foreign bank's contacts with the correspondent bank [] demonstrate[d] more than banking by happenstance" and held that the foreign bank was subject to personal jurisdiction in New York because the "defendants [including the foreign bank] orchestrated the money laundering and that the New York account was integral to the scheme." Id. The wiring of funds through New York in this case, however, was passive, rather than "integral" to the alleged Ponzi scheme. In Rushaid, there was a scheme in which the foreign bank specifically contemplated wiring tainted funds into a New York account from which corrupt payments were then further distributed to individuals with accounts at the foreign bank. Here, the passage of money through the U.S. bank accounts were merely incidental and not specifically directed by any of the HSBC entities to facilitate the Ponzi scheme.

claims, it does not reach HSBC Bank USA's additional arguments for dismissal.

The Court applies the choice of law rules of the state in which it is located. Zerman v. Ball, 735 F.2d 15, 20 (2d Cir. 1984). Under New York's "internal affairs" doctrine, with respect to issues of shareholder standing, that is, whether claims can be brought directly or can only be asserted derivatively, the Court applies the law of the fund's state of incorporation. Stephenson v. Citco Grp. Ltd., 700 F. Supp. 2d 599, 608 (S.D.N.Y. 2010); see, e.g., In re Optimal U.S. Litig., 813 F. Supp. 2d 351, 374 (S.D.N.Y. 2011) (applying internal affairs doctrine to question of whether shareholders could bring a direct claim for breach of fiduciary duty). The internal affairs doctrine ensures that only one jurisdiction "[has] the authority to regulate a corporation's internal affairs - matters peculiar to the relationship among or between the corporation and its . . . shareholders - because otherwise a corporation could be faced with conflicting demands. " See KDW Restructuring & Liquidation Servs. LLC v. Greenfield, 874 F. Supp. 2d 213, 221 (S.D.N.Y. 2002)

Hermes was incorporated in the BVI and thus BVI law governs the question of whether Plaintiffs have standing to bring their claims of aiding and abetting breach of fiduciary duty, unjust enrichment and aiding and abetting fraud. Plaintiffs have not disputed Defendants' assertion that Plaintiffs have no standing under BVI law to bring direct claims.

Under BVI law, a loss claimed by a shareholder that is merely reflective of a loss suffered by the company—that is, a loss which would be made good if the company enforced its full rights—cannot be asserted directly by the shareholder. (See Terceno Decl. Ex. I, Declaration of Arabella Di Iorio, dated January 10, 2016 (citing Johnson v. Gore Wood & Co. (a firm) [2002] 2 AC 1 (H.L.).) Further, even if there were an independent duty owed to a shareholder, BVI law holds that, if the shareholder's loss equals the diminution in the value of

his shares or the loss of dividends, such a loss reflects the loss suffered by the company and permitting a direct suit would result in impermissible double recovery. See id.; see also id. at ¶ 26 ("[P]rovided the loss claimed by the shareholder is merely reflective of the company's loss and provided the defendant wrongdoer owed duties to both the company and to the shareholder, it is irrelevant that the duties so owed may be different in context . . .").

Here, Plaintiffs' alleged loss is simply a share of the loss suffered by the Fund. Plaintiffs' breach of fiduciary duty and unjust enrichment claims stem from allegations that the HSBC Defendants failed to adequately discharge their responsibilities as administrators and custodians of Hermes, failed to monitor Madoff, and ignored red flags. These are all injuries suffered by Hermes, and if Hermes were to recover the full extent of its losses from Madoff and BLMIS, Plaintiffs too would be made whole. The fact that Plaintiffs may have suffered different monetary loss amounts from other investors in Hermes does not transform Plaintiffs' claims into direct ones because Plaintiffs' losses are still tied to the diminution in the value of their shares, which reflects the loss suffered by Hermes. Cf. In re Optimal US Litig., 813 F. Supp. 351, 379 (S.D.N.Y. May 2, 2011) (holding, under New York law, that investors lacked standing to bring direct claims for breach of fiduciary duty and unjust enrichment against Madoff feeder fund service providers because such claims are based on alleged mismanagement of the fund). Further, although there is arguably an independent duty owed to Plaintiffs with respect to the aiding and abetting fraud claim, under BVI law, since Plaintiffs' losses from that claim are still co-extensive with the diminution in the value of their shares, it is not properly brought as a direct claim.[7] Accordingly, Plaintiffs' claims against HSBC Bank USA are dismissed for lack of

---

[7] The result here would not be different if New York law were applied. Under New York law, Plaintiffs would have to show that they were owed an independent duty apart from that owed to the fund in order to assert a direct claim. Fraternity Fund

standing.

In light of the resolution of the foregoing issues, it is unnecessary for the Court to address the remaining grounds of Defendants' motion.

CONCLUSION

Defendants' motion to dismiss the Complaint is granted. The Clerk of Court is directed to enter judgment for the Defendants and close the case. This Memorandum Order and Opinion resolves docket entry number 25.

SO ORDERED.

Dated: New York, New York
March 1, 2017

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005). Plaintiffs have not alleged the existence of such an independent duty here. To the extent that Plaintiffs have a plausible claim that the aiding and abetting fraud claim stemmed from an independent duty owed to them by HSBC Defendants, that claim would be untimely under the applicable statute of limitations applicable to fraud claims. N.Y. C.P.L.R. § 213(8).